Westlaw.

2006 WL 348289                                                                                          Page 1
--- F.3d ----, 2006 WL 348289 (4th Cir.(Va.))
**(Cite as: 2006 WL 348289 (4th Cir.(Va.)))**

Only the Westlaw citation is currently available.

United States Court of Appeals,
Fourth Circuit.
Stan **LABER**, Plaintiff-Appellant,
v.
Francis J. HARVEY, Secretary of the Army,
Defendant-Appellee.
**No. 04-2132.**

Argued Oct. 27, 2005.
Decided Feb. 16, 2006.

**Background:** Civilian Army employee sued Secretary of the Army, seeking additional relief pursuant to administrative finding of religious discrimination, and also asserting claims for age discrimination and retaliation. The United States District Court for the Eastern District of Virginia, Gerald Bruce Lee, J., granted summary judgment for Secretary, and subsequently denied employee's motion for reconsideration and motion to amend complaint. Employee appealed.

 **Holdings:** On rehearing en banc, the Court of Appeals, Williams, Circuit Judge, held that:
 (1) under Title VII, federal-sector employee cannot bring civil action alleging only that employee's administrative remedy was insufficient, but rather must, to claim entitlement to more favorable award, place agency's discrimination at issue; overruling

_Pecker v. Heckler, 801 F.2d 709_, and _Morris v. Rice, 985 F.2d 143_;
 (2) as a matter of apparent first impression, district court had subject matter jurisdiction over claim challenging sufficiency of administrative award;
 (3) denying employee's motion for reconsideration and motion to amend complaint was abuse of discretion;
 (4) employee failed to establish prima facie case of age discrimination in violation of Age Discrimination in Employment Act (ADEA); and
 (5) employee failed to establish retaliation.
Reversed in part, vacated and remanded in part with instructions, and affirmed in part.

 Wilkinson, Circuit Judge, filed a concurring opinion.

 Widener, Circuit Judge, filed a concurring and dissenting opinion.

 Niemeyer, Circuit Judge, filed an opinion concurring in part and dissenting in part.

**[1] Civil Rights** ☞0

78k0 k.
Complaint in which civilian employee of the Army sought additional relief pursuant to administrative finding of religious discrimination did not put at issue Army's alleged Title VII liability for such discrimination; complaint only stated that Army had discriminated against employee as background information, and indicated that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

employee was not appealing finding of discrimination. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[2] Federal Civil Procedure** 0
170Ak0 k.
In interpreting a pro se complaint, court's task is not to discern the unexpressed intent of plaintiff, but what the words in the complaint mean.

**[3] Federal Civil Procedure** 0
170Ak0 k.
Courts must construe pro se complaints liberally.

**[4] Federal Courts** 0
170Bk0 k.
If district court believed that it lacked subject matter jurisdiction over federal employee's Title VII claim for additional relief for alleged religious discrimination, proper course was to dismiss claim, rather than granting summary judgment on it. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[5] Federal Courts** 0
170Bk0 k.
Employee waived any argument that district court erroneously denied his motion for reconsideration as it pertained to his claims alleging age discrimination and retaliation when his arguments on appeal focused solely on whether district court correctly denied his motion to amend Title VII claim alleging religious discrimination. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et

seq.; F.R.A.P.Rule 28(a)(9), 28 U.S.C.A.

**[6] Civil Rights** 0
78k0 k.
All employees alleging discrimination, whether in the private-sector or federal, must exhaust their administrative remedies before exercising right of action under Title VII. Civil Rights Act of 1964, §§ 706, 717, 42 U.S.C.A. §§ 2000e-5(f)(1), 2000e-16(c).

**[7] Civil Rights** 0
78k0 k.
Given that Equal Employment Opportunity Commission (EEOC) has no power to order private-sector employer to take corrective action, even if it finds reasonable cause to believe employee's allegations of discrimination in violation of Title VII, EEOC must attempt to eliminate discriminatory practice through informal methods of conciliation. 29 C.F.R. § 1601.24.

**[8] Civil Rights** 0
78k0 k.
Office of Federal Operations (OFO) of the Equal Employment Opportunity Commission (EEOC) may award compensatory damages to federal employee against whom agency has discriminated in violation of Title VII. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[9] Civil Rights** 0
78k0 k.
Under Title VII, right of action arising under statute granting federal employees right to file civil action seeking judicial review of discrimination claim if "aggrieved" by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

decision of Office of Federal Operations (OFO) of the Equal Employment Opportunity Commission (EEOC) is identical to the right of action possessed by a private-sector employee who has received a right-to-sue letter. Civil Rights Act of 1964, § 717, as amended, 42 U.S.C.A. § 2000e-16(c); 29 C.F.R. § 1614.407(c).

**[10]** Civil Rights ⟜0
78k0 k.
In federal employee's action for judicial enforcement of decision of Office of Federal Operations (OFO) of the Equal Employment Opportunity Commission (EEOC) respecting employee's Title VII discrimination claim, issue is not liability or remedy, as it is in a civil action, but rather whether federal employer has complied with OFO's remedial order. 5 U.S.C.A. § 551 et seq.; 28 U.S.C.A. § 1361; Civil Rights Act of 1964, § 717, as amended, 42 U.S.C.A. § 2000e-16(c); 29 C.F.R. § 1614.503(g).

**[11]** Statutes ⟜0
361k0 k.
In all cases requiring the interpretation of a statute, court begin its analysis with the language of the statute itself, determining whether the language has a plain and unambiguous meaning with regard to particular dispute in case.

**[12]** Civil Rights ⟜0
78k0 k.
Title VII does not authorize federal-sector employee to bring civil action alleging only that remedy awarded by Office of Federal Operations (OFO) of the Equal Employment

Opportunity Commission (EEOC) on discrimination claim was insufficient, but rather requires that employee, to claim entitlement to more favorable remedial award, place employing agency's discrimination at issue; overruling *Pecker v. Heckler*, 801 F.2d 709, and *Morris v. Rice*, 985 F.2d 143. Civil Rights Act of 1964, §§ 706, 717, 42 U.S.C.A. §§ 2000e-5(g)(1), 2000e-16(c, d).

**[13]** Civil Rights ⟜0
78k0 k.
Federal employee who puts his employing agency's alleged discrimination at issue in Title VII action cannot require district court to make finding of liability based on administrative finding of discrimination by Office of Federal Operations (OFO) of the Equal Employment Opportunity Commission's (EEOC). Civil Rights Act of 1964, §§ 706, 717, 42 U.S.C.A. §§ 2000e-5(g)(1), 2000e-16(c, d).

**[14]** Federal Courts ⟜0
170Bk0 k.
Resolution of federal employee's Title VII claim that challenged only sufficiency of administrative remedy for employing agency's alleged religious discrimination required interpretation of federal law, and therefore district court had subject matter jurisdiction over claim pursuant to statute governing federal question jurisdiction. 28 U.S.C.A. § 1331; Civil Rights Act of 1964, §§ 706, 717, 42 U.S.C.A. §§ 2000e-5(g)(1), 2000e-16(c, d).

**[15]** Federal Courts ⟜0
170Bk0 k.
District court has subject matter jurisdiction

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

under statute governing federal question jurisdiction when the right of petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another. 28 U.S.C.A. § 1331.

**[16] Federal Courts** 🗝0
170Bk0 k.
Although federal employee's acceptance of part of administrative remedy ordered by Office of Federal Operations (OFO) of the Equal Employment Opportunity Commission (EEOC) on his Title VII religious discrimination claim could be relevant in determining whether civil action on religious discrimination claim was barred by affirmative defense, such as res judicata, estoppel, or election of remedies, it did not preclude district court's subject matter jurisdiction over claim. 28 U.S.C.A. § 1331; Civil Rights Act of 1964, §§ 706, 717, 42 U.S.C.A. §§ 2000e-5(g)(1), 2000e-16(c, d).

**[17] Federal Civil Procedure** 🗝0
170Ak0 k.
Proposed amendment to pleading is "prejudicial" when it raises a new legal theory that would require the gathering and analysis of facts not already considered by defendant and is offered shortly before or during trial; amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[18] Federal Civil Procedure** 🗝0

170Ak0 k.
Delay alone is an insufficient reason to deny motion to amend complaint. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[19] Federal Civil Procedure** 🗝0
170Ak0 k.
District court may not deny motion to amend complaint simply because it has entered judgment against plaintiff, whether it is a judgment of dismissal, summary judgment, or judgment after trial on the merits; instead, post-judgment motion to amend is evaluated under the same legal standard as a similar motion filed before judgment was entered, to determine whether denial is warranted on grounds of prejudice, bad faith, or futility. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[20] Federal Civil Procedure** 🗝0
170Ak0 k.
District court may not grant post-judgment motion to amend unless judgment is vacated pursuant to rule governing motions to alter or amend judgment or rule governing motions for relief from judgment. Fed.Rules Civ.Proc.Rules 15(a), 59(e), 60(b), 28 U.S.C.A.

**[21] Federal Courts** 🗝0
170Bk0 k.
Conclusion by Court of Appeals that district court abused its discretion in denying motion to amend complaint is sufficient grounds on which to reverse district court's denial of motion to alter or amend judgment. Fed.Rules Civ.Proc.Rules 15(a), 59(e), 28 U.S.C.A.

**[22] Federal Courts** 🗝0

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

170Bk0 k.
Regardless of whether the motion to amend complaint is filed pre-judgment or post-judgment, Court of Appeals reviews for abuse of discretion district court's decision on motion to amend. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[23] Federal Civil Procedure** 🔑0
170Ak0 k.
Denial of federal employee's motion for reconsideration and motion to amend complaint, which sought to add Title VII claim putting at issue employing agency's alleged religious discrimination, was abuse of discretion, given that omission of that legal theory from original complaint was not done in bad faith, but rather was arguably proper under then-governing circuit precedent, employing agency would not have been prejudiced by proposed amendment, and amendment was not futile. Civil Rights Act of 1964, §§ 706, 717, 42 U.S.C.A. §§ 2000e-5(g)(1), 2000e-16(c, d); Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[24] Federal Courts** 🔑0
170Bk0 k.
Army's argument that civilian employee's request for attorney fees and costs in connection with Title VII claim for alleged religious discrimination was untimely was different argument from contention that religious discrimination claim itself was untimely, and making of former argument did not preserve latter argument for appeal. Civil Rights Act of 1964, § 717, as amended, 42 U.S.C.A. § 2000e-16(c).

**[25] Federal Courts** 🔑0
170Bk0 k.
In the absence of exceptional circumstances, nonjurisdictional arguments not made to the district court are waived on appeal.

**[26] Federal Courts** 🔑0
170Bk0 k.
Army's contention that civilian employee's religious discrimination claim under Title VII was untimely did not challenge district court's subject matter jurisdiction to hear claim, but rather was in the nature of limitations defense that could be waived. Civil Rights Act of 1964, § 717, as amended, 42 U.S.C.A. § 2000e-16(c).

**[27] Civil Rights** 🔑0
78k0 k.
Courts apply *McDonnell Douglas* burden-shifting framework to resolve claims of age discrimination under Age Discrimination in Employment Act (ADEA) when plaintiff produces no direct or circumstantial evidence of discrimination sufficient to warrant a mixed-motive analysis. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

**[28] Civil Rights** 🔑0
78k0 k.
Under *McDonnell Douglas* burden-shifting framework used to resolve claims of age discrimination when plaintiff produces no direct or circumstantial evidence of discrimination sufficient to warrant a mixed-motive analysis, plaintiff must first establish prima facie case of discrimination under Age Discrimination in Employment Act

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(ADEA). Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

**[29] Civil Rights** ⚖0
78k0 k.
To establish prima facie case of age discrimination under Age Discrimination in Employment Act (ADEA), plaintiff must demonstrate that (1) he was a member of a protected class, in that he was at least 40 years old, (2) his employer had an open position for which he applied and was qualified, (3) he was rejected despite his qualifications, and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than plaintiff, whether within or outside the class protected by ADEA. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

**[30] Civil Rights** ⚖0
78k0 k.
Once plaintiff asserting age discrimination claim under Age Discrimination in Employment Act (ADEA) makes prima facie case, he creates presumption of discrimination and burden of production shifts to employer to articulate legitimate, nondiscriminatory reason for its adverse employment decision; if employer satisfies this burden, presumption disappears and plaintiff must show that articulated reason is a pretext for age discrimination. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

**[31] Civil Rights** ⚖0

78k0 k.
To show that employer's articulated reason for adverse employment decision was pretext for age discrimination in violation of Age Discrimination in Employment Act (ADEA), plaintiff must do more than simply show that articulated reason is false, and must also show that employer discriminated against him on the basis of age. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

**[32] Civil Rights** ⚖0
78k0 k.
Civilian employee failed to show that he was qualified for position to which he was not promoted by the Army, and thus to establish prima facie case of age discrimination in violation of Age Discrimination in Employment Act (ADEA); testimony that employee was minimally qualified for generic position of operations research analyst did not establish that he was qualified to perform specific requirements of position of operations research analyst for which he applied, and person who made hiring decision determined, after reviewing employee's supplemental information, that employee lacked requisite education, experience, and training for job. Age Discrimination in Employment Act of 1967, § 15, 29 U.S.C.A. § 633a.

**[33] Civil Rights** ⚖0
78k0 k.
*McDonnell Douglas* framework applies to claims of employment retaliation.

**[34] Civil Rights** ⚖0
78k0 k.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

To establish prima facie case of employment retaliation, plaintiff must demonstrate that (1) he engaged in protected activity, (2) an adverse employment action was taken against him, and (3) there was causal link between protected activity and adverse action.

**[35] Civil Rights** ☞0
78k0 k.
If plaintiff establishes a prima facie case of employment retaliation, court considers whether employer produced legitimate, nondiscriminatory reason for its adverse employment action, and, if so, whether plaintiff can show that such reason is false, and, ultimately, that employer retaliated against him.

**[36] Civil Rights** ☞0
78k0 k.
Even if civilian employee demonstrated prima facie case of retaliation in connection with Army's decision not to promote him, employee failed to show that he was qualified for position sought, and thus failed to make requisite demonstration that Army's legitimate, nondiscriminatory reason for employee's non-selection, that he lacked necessary qualifications, was false.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (CA-03-732-1-A).

**ARGUED:** Jeffrey Howard Greger, Fairfax, Virginia, for Appellant. Charles Wylie Scarborough, United States Department of Justice, Civil Division, Appellate Section, Washington, D.C., for Appellee. **ON BRIEF:**

Paul J. McNulty, United States Attorney, Kevin J. Mikolashek, Special Assistant United States Attorney, Office of the United States Attorney, Alexandria, Virginia; Captain Steven Michael Ranieri, United States Army Legal Services Agency, Arlington, Virginia, for Appellee.

Before WILKINS, Chief Judge, and WIDENER, WILKINSON, NIEMEYER, LUTTIG, WILLIAMS, MICHAEL, MOTZ, TRAXLER, KING, GREGORY, SHEDD, and DUNCAN, Circuit Judges.

Reversed in part, vacated and remanded in part, and affirmed in part by published opinion. Judge WILLIAMS wrote the opinion, in which Chief Judge WILKINS, Judge WILKINSON, Judge LUTTIG, Judge MICHAEL, Judge MOTZ, Judge TRAXLER, Judge KING, Judge GREGORY, Judge SHEDD, and Judge DUNCAN joined. Judge WILKINSON wrote a separate concurring opinion. Judge WIDENER wrote a separate opinion concurring in part and dissenting in part. Judge NIEMEYER wrote a separate opinion concurring in part and dissenting in part.

**OPINION**

WILLIAMS, Circuit Judge.

**\*1** Stan **Laber,** a civilian employee of the Army, complained to the Equal Employment Opportunity Commission's Office of Federal Operations (OFO) that on two occasions the Army did not give him a job promotion for reasons that violated Title VII of the Civil

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e-16 (West Supp.2005) (Title VII) and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.A. § 633a (West Supp.2005) (ADEA). In particular, **Laber** asserted that the Army once failed to promote him because of religious discrimination and later failed to promote him because of age discrimination and in retaliation for his prior Equal Employment Opportunity (EEO) filings. The OFO found that the Army had discriminated against **Laber** on the basis of religion and awarded him certain relief, although it did not award him all he sought. The OFO also found that the Army had neither discriminated against **Laber** on the basis of age nor retaliated against him.

 **Laber** filed suit in the district court alleging that (1) the OFO's remedy was insufficient to compensate him for the Army's religious discrimination and (2) the Army discriminated against him on the basis of age and retaliated against him. On his first claim, **Laber** contended that because the OFO found that the Army unlawfully discriminated against him on the basis of religion, he was not required to relitigate the issue of liability in order to seek additional relief on that claim. The district court granted the Army's motion for summary judgment on both of **Laber's** claims, concluding that (1) it lacked subject-matter jurisdiction over **Laber's** claim for additional relief, and (2)(a) **Laber's** age discrimination claim failed because he had not shown he was qualified for the job in question, and (b) **Laber's** retaliation claim failed because the hiring officer made the

decision not to select him before the officer knew about his prior EEO activity. After the district court's entry of judgment, **Laber** filed a motion for reconsideration and a motion to amend his complaint, wherein he sought to put at issue the Army's underlying liability on his claim of religious discrimination. The district court denied these motions, and **Laber** appeals.

 In concluding that it lacked subject-matter jurisdiction over **Laber's** claim for additional relief, the district court overlooked *Pecker v. Heckler,* 801 F.2d 709 (4th Cir.1986), and *Morris v. Rice,* 985 F.2d 143 (4th Cir.1993). Those cases stand for the proposition that a federal-employee plaintiff who prevails before the OFO on the issue of liability but is unsatisfied with the OFO's remedial award may file a civil action in the district court seeking additional relief without also putting at issue the OFO's finding of discrimination.

 After oral argument to the panel assigned to hear this case, and at the request of that panel, a majority of the active circuit judges on this court agreed to rehear this case en banc to consider the continuing viability of *Pecker* and *Morris.* We now overrule *Pecker* and *Morris* and hold that a federal-employee plaintiff who prevails before the OFO on the issue of liability but who is unsatisfied with the OFO's remedy must place his employing agency's discrimination at issue in order properly to claim entitlement to a more favorable remedial award in the district court. **Laber's** failure to comply with this rule was not a jurisdictional defect, but it did entitle the Army to summary judgment on his claim for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

additional relief only. We also conclude, however, that the district court abused its discretion in denying **Laber's** motion for reconsideration and motion to amend: **Laber** did not act in bad faith, his proposed amendment would not cause any prejudice to the Army, and the proposed amendment is not futile.

**\*2** Finally, we hold that the district court correctly granted summary judgment in favor of the Army on **Laber's** claim of age discrimination and retaliation. **Laber** failed to show he was qualified for the job in question and did not demonstrate that the Army's legitimate, non-discriminatory reason for his non-selection was a pretext for retaliation.

For reasons that are more extensively explained herein, we reverse the district court's denial of **Laber's** motion for reconsideration and motion to amend, vacate the district court's grant of the Army's motion for summary judgment on **Laber's** claim for additional relief, and remand with instructions to allow **Laber** to amend his complaint to put at issue the Army's alleged religious discrimination. We also affirm the grant of summary judgment to the Army on **Laber's** claims of age discrimination and retaliation.

## I.

This appeal involves claims arising out of two occasions when the Army denied **Laber** a promotion. The administrative proceedings were protracted, and our resolution of the appeal requires us briefly to consider those proceedings and the facts that underlie them.

## A.

**Laber,** a male born in 1945, was employed by the Army as an Operations Research Analyst at Fort Sheridan, Illinois. In mid-1990, motivated in part by his Jewish heritage, **Laber** applied for a position as a Industrial Specialist in Tel Aviv, Israel. During the job interview, the selecting officer, Leo Sleight, asked **Laber** if he could be objective when dealing with Jewish contractors. **Laber** answered affirmatively, but Sleight offered the job to another applicant.

**Laber** filed a formal EEO complaint with the Army alleging that Sleight discriminated against him on the basis of religion in failing to select him for the job. The Army accepted the complaint and, after conducting an internal investigation, concluded that **Laber** suffered no discrimination. **Laber** appealed to the OFO.

On December 22, 1998, the OFO reversed and ordered the Army, inter alia, to pay **Laber** any backpay and benefits for which the Army determined he was eligible and to appoint **Laber** as an Industrial Specialist in Israel or find a similar position for him. On January 25, 1999, **Laber** filed a motion for reconsideration, which the OFO denied on April 11, 2000. In May 2000, the Army determined that **Laber** was entitled to no backpay because his pay at his current job was higher than it would have been had he been working in Israel and that he was entitled to no overseas benefits because he had not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

actually been overseas. The Army also offered **Laber** a position as an Industrial Specialist in Germany, contending that it had no similar positions open in Israel. **Laber** refused the job in Germany and instead filed a petition for enforcement with the OFO, claiming, inter alia, that the Army's backpay and benefits calculations and its job offer were insufficient. Soon thereafter, the Army re-offered **Laber** the position in Germany, which he accepted, and in doing so, he expressly waived any claim that the Germany position was not compliant with that portion of the OFO's remedial award. He therefore withdrew that portion of his petition for enforcement challenging the Army's Germany job offer.

**\*3** On January 23, 2002, the OFO issued a decision on the remainder of the petition for enforcement. In relevant part, the OFO determined that the record was unclear with respect to **Laber's** backpay and benefits arguments, and it required the Army to redetermine whether **Laber** was entitled to additional backpay and benefits. On or about May 29, 2002, the Army did so and concluded that **Laber** was entitled to over $9,000 in additional backpay, but that he was not entitled to receive any overseas benefits. On March 4, 2002, **Laber** filed a petition for clarification with the OFO, asserting that the Army's benefits and backpay calculations were still deficient. On March 10, 2003, the OFO affirmed that the Army had fully complied with the OFO's December 22, 1998 decision.

### B.

The second event giving rise to this lawsuit occurred in 1993. After returning from Germany, **Laber** was employed as a Management Analyst at the Defense Logistics Agency in Chicago, Illinois when a position for an Operations Research Analyst in the Economic Analysis Division of the Cost and Economic Analysis Agency in Falls Church, Virginia became available. **Laber** was a "priority candidate" for the position because of his prior EEO activity. [FN1] (J.A. at 28, 405.) The parties agree that priority candidates need not compete against other candidates; rather, if qualified for the positions for which they have applied, they must be selected.

The Army's civilian personnel office determined that **Laber** was "minimally qualified" for the Operations Research Analyst position, (J.A. at 457), and forwarded **Laber's** application form, Form 2302, to Richard Scott, the selecting officer, for further evaluation. An applicant who is "minimally qualified" is not necessarily qualified for the particular job vacancy, but only satisfies the basic competency requirements for a generic job within the pay grade and title. Scott examined **Laber's** Form 2302 and concluded, like the personnel office, that **Laber** was "minimally qualified" for the position. (J.A. at 426.) Scott therefore called **Laber** to request that he supplement his Form 2302 with additional information regarding his qualifications for the particular position. **Laber** avers that during this conversation, Scott, who knew that **Laber** was a priority candidate, asked him whether he had prior EEO activity in order to determine why he had received priority status. **Laber** further alleges

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that he informed Scott that he had prior EEO activity and that Scott immediately became short with him and quickly ended the conversation. After reviewing **Laber's** supplemental information, Scott determined that **Laber** was not qualified for the particular job. Instead, Scott chose a male candidate under 40 years of age who was not on the priority candidate list.

**Laber** filed a complaint with the Army alleging age discrimination and retaliation. The Army accepted the complaint, investigated **Laber's** allegations, and found that Scott had not discriminated against **Laber. Laber** appealed to the OFO and, on June 25, 2003, the OFO affirmed the Army's findings.

**\*4** II.

[1][2][3] On June 4, 2003, unhappy with the OFO's decision on his religious discrimination claim and anticipating an unfavorable decision on his age discrimination and retaliation claims, **Laber** filed a pro se complaint in the district court alleging claims of (1) religious discrimination and (2) age discrimination and retaliation. [FN2] While **Laber** alleged as background information that the Army had discriminated against him on the basis of religion, his complaint explicitly refrained from seeking a judicial determination of whether the Army had discriminated against him on that basis. (J.A. at 7 ("Plaintiff is not appealing the finding of [religious] discrimination, but seeks additional relief.").) Because **Laber** believed that the OFO's

finding of religious discrimination settled that issue in his favor, he only sought additional backpay, benefits, and attorney's fees and costs because of the religious discrimination. [FN3] **Laber** did, however, allege (and put at issue) that the Army had discriminated against him on the basis of age and retaliated against him for his prior EEO complaints.

[4] The Army filed a motion for summary judgment, which the district court granted. The district court concluded, inter alia, that it lacked subject-matter jurisdiction over **Laber's** claim for additional relief arising out of the Army's religious discrimination because **Laber** did not also put the Army's underlying discrimination at issue . [FN4] Based on this conclusion, the district court granted the Army's motion for summary judgment on this claim. [FN5] In addition, the district court concluded that **Laber** had not made a prima facie case of age discrimination because he had not shown he was qualified for the job, and that he did not make a prima facie case of retaliation because Scott made the decision not to select him before Scott even knew that he had previously filed discrimination complaints. The district court therefore granted summary judgment on **Laber's** age discrimination and retaliation claims as well.

[5] After the district court entered judgment, **Laber** filed a motion for reconsideration and a motion to amend. **Laber** argued, inter alia, that he did not intend to put only the question of whether he was entitled to additional relief at issue in his complaint; rather, he contended, he intended also to seek a judicial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

determination of whether the Army discriminated against him on the basis of religion. **Laber** attached an amended complaint to the motion to amend. The amended complaint was identical to the original complaint except for one sentence: "Plaintiff *is* appealing the finding of [religious] discrimination...." (Pl.'s Amended Complaint (emphasis added).) The district court construed **Laber's** motion for reconsideration as a motion under Fed.R.Civ.P. 59(e) and his motion to amend as a motion under Fed.R.Civ.P. 15(a), and denied both motions. [FN6]

**Laber** appeals the district court's grant of the Army's motion for summary judgment and its denial of his motions for reconsideration and to amend. We have jurisdiction under 42 U.S.C.A. § 2000e-5(j) (West 2003) and 28 U.S.C.A. § 1291 (West 1993).

### III.

**\*5 Laber** first argues that the district court erred in granting summary judgment to the Army on his claim for additional relief arising out of the Army's religious discrimination. He contends that Title VII authorizes a federal-employee plaintiff who prevailed before the OFO on the issue of liability but is unsatisfied with the OFO's remedial award to file a civil action alleging only that he is entitled to additional relief.

We review de novo the district court's grant of summary judgment to the Army. *See Hill v. Lockheed Martin Logistics Mgmt.,* 354 F.3d 277, 283 (4th Cir.2004) (en banc). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (West 1992); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We construe the facts in the light most favorable to **Laber,** the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In examining this argument we first consider the legal background in which the argument arises. Next, we consider the implications of *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), on our prior cases and hold that *Chandler* requires us to overrule those cases. Finally, we decide that the rule we announce is not one that deprived the district court of subject-matter jurisdiction because it involved the interpretation of a federal law.

### A.
### 1.

[6] As amended, Title VII of the Civil Rights Act of 1964 creates a right of action for both private-sector and certain [FN7] federal employees alleging employment discrimination on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C.A. § 2000e-5(f)(1) (West 2003) (private-sector employees); 42 U.S.C.A. § 2000e-16(c) (federal employees). [FN8] All employees, private-sector or federal, alleging such discrimination must, however, exhaust

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

their administrative remedies before exercising this right. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 181, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), *superceded by statute on other grounds by* 42 U.S.C.A. § 1981(b) (West 2003) (private-sector employees); *Brown v. Gen. Servs. Admin.,* 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (federal employees). The administrative remedies available for federal employees are significantly broader than the administrative remedies for employees in the private sector. *See generally Moore v. Devine,* 780 F.2d 1559, 1562 (11th Cir.1986) (discussing differences in administrative remedies for private-sector and federal employees).

[7] An employee in the private sector who believes that his employer has discriminated against him in violation of Title VII must file an administrative charge with the Equal Employment Opportunity Commission (EEOC) against his employer. *See* 29 C.F.R. § 1601.7 (2004). The EEOC investigates the complaint to determine whether there is reasonable cause to believe the employee's allegations. *See* 29 C.F.R. §§ 1601.15, 1601.21. Because the EEOC has no power to order the private-sector employer to take corrective action even if it finds such reasonable cause exists, "it must attempt to eliminate the discriminatory practice through informal methods of conciliation." *Moore,* 780 F.2d at 1562; *see also* 29 C.F.R. § 1601.24. If these attempts fail, or if the EEOC has found no reasonable cause, the EEOC issues the employee a right-to-sue letter explaining that he may bring a "civil action" in federal court

seeking judicial review of his discrimination claim. *See* 42 U.S.C.A. § 2000e-5(f)(1); 29 C.F.R. § 1601.28.

**\*6** [8] A federal employee who believes that his employing agency discriminated against him in violation of Title VII must file an administrative complaint with the agency. *See* 29 C.F.R. § 1614.106. The agency investigates the claim, *see* 29 C.F.R. § 1614.108-109, and, if it concludes there was no discrimination, it issues a final agency decision to that effect, *see* 29 C.F.R. § 1614.110. The employee may then appeal the agency's decision to the OFO. *See* 29 C.F.R. § 1614.401(a). [FN9] Unlike in the private-sector context, if the OFO finds discrimination, it has the power to order corrective action. *See* 42 U.S.C.A. § 2000e-16(b); 29 C.F.R. § 1614.405. In fact, if the OFO finds that the agency discriminated against an applicant for employment, like **Laber,** the OFO must award the employee the position for which he applied (or its substantial equivalent) and back pay. *See* 29 C.F.R. § 1614.501(b). The OFO may also award compensatory damages, *see West v. Gibson,* 527 U.S. 212, 119 S.Ct. 1906, 144 L.Ed.2d 196 (1999), and attorney's fees and costs, *see* 29 C.F.R. § 1614.501(e).

[9][10] While the employing agency has no right to seek judicial review of the OFO's resolution of an employee's claim, the regulations provide an employee two separate avenues into federal court. First, the employee has the right to file a "civil action" seeking judicial review of his discrimination claim if he is "aggrieved" by the OFO's decision. *See* 42 U.S.C.A. § 2000e-16(c) (right of action

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

exists if employee "aggrieved"); 29 C.F.R. § 1614.407(c). This right of action is identical to the right of action possessed by a private-sector employee who has received a right-to-sue letter. *See Chandler v. Roudebush,* 425 U.S. 840, 844-45, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) (holding that "federal employees [have] the same right [of action] as private sector employees enjoy"). [FN10] Second, the regulations provide that an employee may, in certain circumstances, the contours of which are not relevant here, seek judicial enforcement of the OFO's underlying decision either by filing a suit for "enforcement of the [OFO's] decision," or by "seek [ing] judicial review of the agency's refusal to implement the ordered relief pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.,* and the mandamus statute, 28 U.S.C. § 1361." 29 C.F.R. § 1614.503(g). In a suit for enforcement, the issue is not liability or the remedy, as it is in a civil action, but rather whether the federal employer has complied with the OFO's remedial order. *See Scott v. Johanns,* 409 F.3d 466, 469 (D.C.Cir.2005) ("In ... enforcement actions, the court reviews neither the discrimination finding nor the remedy imposed, examining instead only whether the employing agency has complied with the administrative disposition."); *Timmons v. White,* 314 F.3d 1229, 1232 (10th Cir.2003) (concluding that the "[p]laintiff [was] not seeking enforcement of a final EEOC order" because he "requested more relief than the EEOC awarded").

### 2.

**\*7** We have applied these provisions before.

In *Pecker v. Heckler,* 801 F.2d 709 (4th Cir.1986), the federal-employee plaintiff filed an administrative complaint against her employing agency alleging unlawful employment discrimination in failing to promote her. Id. at 710. The agency agreed that it had discriminated against the plaintiff and indicated it would provide her priority consideration for the next job opening. *Id.* The plaintiff appealed to the OFO, contending that the agency's remedy was insufficient, and the OFO affirmed the agency's decision. *Id.* The plaintiff then filed suit in the district court seeking, inter alia, a declaration that the agency discriminated against her and an injunction requiring the agency immediately to promote her. Id. [FN11] The agency moved for summary judgment, contending that the OFO's award was sufficient, and the district court granted summary judgment to the agency. *Id.*

On appeal, we reversed, holding that the employee was entitled to the declaration because "the [agency is] bound by the [OFO]'s findings of discrimination." *Id.* at 711 n. 3. In addition, despite the OFO's determination that the plaintiff was entitled only to priority consideration for the next job opening, we concluded that the plaintiff had demonstrated that she was entitled to an immediate promotion. *Id.* at 712.

In *Morris v. Rice,* 985 F.2d 143 (4th Cir.1993), a federal employee filed an administrative claim against his employing agency alleging unlawful discrimination in failing to promote him. Id. at 144. The agency agreed that discrimination had occurred, but

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

found that he was entitled to neither the position nor back pay because he would not have been promoted even if there had been no discrimination. *Id.* at 145. Dissatisfied with the remedy, the employee appealed to the OFO, which affirmed. *Id.* The employee then filed a civil action in the district court seeking review of the OFO's determination of discrimination and its remedy. *Id.* The district court granted the employee's motion for summary judgment on his claim of liability. *Id.* We affirmed, citing *Pecker* for the conclusion that a "[federal-employee] plaintiff [who files a civil action] may limit and tailor his request for *de novo* review, raising questions about the remedy without exposing himself to *de novo* review of a finding of discrimination." *Id.*

 *Pecker* and *Morris* stand for the proposition that Title VII authorizes a federal employee to bring a civil action wherein he challenges only the OFO's remedial award, but does not put his employing agency's underlying discrimination at issue. [FN12] A fair application of the rule announced in *Pecker* and *Morris* to the facts of this case would require us to reverse the district court's grant of the Army's motion for summary judgment. For reasons we explain in more detail below, however, we do not apply *Pecker* and *Morris* because the rule those cases announced was inconsistent with the statutory scheme and prior Supreme Court case law.

B.

1.

 **\*8** [11] As in all cases requiring the interpretation of a statute, we begin our analysis with the language of the statute itself. *See United States v. Abuagla,* 336 F.3d 277, 278 (4th Cir.2003). "We must first determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Id.* (internal quotation marks omitted).

 The relevant statutory language here is minimal, but nevertheless significant: it provides that a federal employee has the right to bring a "civil action" seeking judicial review of his claim, 42 U.S.C.A. § 2000e-16(c), and that the district court may provide certain equitable remedies on the claim only "[i]f the court finds" that the agency intentionally discriminated against him, 42 U.S.C.A. § 2000e-5(g) (West 2003). [FN13] By authorizing the district court to award equitable remedies only if *it* makes certain findings, Title VII contemplates that the civil action authorized therein requires the agency's underlying discrimination to be an issue in the case. *See (William) Morris v. Rumsfeld,* 420 F.3d 287, 292 (3d Cir.2005) ("This language appears to contemplate that a judicial remedy must depend on judicial--not administrative--findings of discrimination, and no other statutory language suggests that this requirement should change if a claimant does in fact present an administrative finding of liability to the court."); *Scott,* 409 F.3d at 470 ("[I]n a federal-sector Title VII case, any remedial order must rest on judicial findings of liability, and nothing in the statute's language suggests that such findings are unnecessary in cases where a final administrative disposition has already found discrimination and awarded relief.");

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Timmons,* 314 F.3d at 1235 ("[A] district court, which under the applicable statutes, must 'find' discrimination prior to awarding relief, cannot award new relief, or expand the relief already awarded, without first determining for itself whether the alleged discrimination has occurred."). [FN14]

While the phrase "civil action" does not have a self-evident meaning that answers the question before us, the Supreme Court has given meaning to the phrase. In *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), the plaintiff, a federal employee, filed a discrimination complaint with her employing agency, which found no discrimination. *Id.* at 842. The agency's decision was affirmed on administrative appeal, [FN15] and the employee filed a civil action in the district court. *Id.* The district court, reviewing the administrative decision with a degree of deference, granted summary judgment to the agency. *Id.* at 843. The court of appeals affirmed, agreeing that the administrative findings were entitled to deference. *Id.*

The Supreme Court reversed, noting that it was "well established" that Title VII gave "private-sector employees the right to "*de novo* consideration of their [employment discrimination] claims" without requiring the district courts to give deference to an EEOC finding of no reasonable cause. *Id.* at 844. Because federal employees' right to bring a "civil action" is, by statute, identical to that of private-sector employees, the Supreme Court held that it "follow[ed] syllogistically that federal employees are entitled to a *trial de*

*novo* on their employment discrimination claims." *Id.* at 846 (emphasis added).

**\*9** *Chandler,* of course, does not directly control here. It held only that a federal employee's right to bring a "civil action" entitles him to a "trial de novo" on his discrimination claims in the district court where the OFO *rejects* his allegations of discrimination; it did not expressly hold that a federal employee who brings a civil action in the district court must put his employing agency's underlying discrimination at issue if the OFO *accepts* those allegations. *Chandler's* logic, however, extends to such a holding.

First, it was clear at the time of *Chandler* that private-sector employees not only had the *right* to a de novo judicial consideration of their discrimination claims without regard to the EEOC's finding of reasonable cause, *id.* at 844-45, but also that they were unable to use the EEOC's finding to compel a finding of discrimination in the district court. In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for example, the Supreme Court concluded that a private-sector employee was required to introduce a genuine issue of material fact on his Title VII claim despite the fact the EEOC had made a finding of reasonable cause on that claim. *Id.* at 801-02. If a private-sector employee must introduce the existence of a genuine issue of material fact that his employer discriminated against him to stave off summary judgment, it necessarily follows that discrimination must be an issue in the case. Because *Chandler* teaches that federal employees have the "same" rights as

private-sector employees, 425 U.S. at 841, a holding that federal employees may put at issue only the OFO's remedial award would violate *Chandler* by giving federal employees *greater* rights than private sector employees in a civil action. See *Scott,* 409 F.3d at 470 ("Requiring federal-sector plaintiffs to prove liability puts them in approximately the same position as private-sector plaintiffs who, unable to obtain legally-binding [OFO] findings, must litigate both liability and remedy." (citations omitted)).

Second, "the plain meaning of the term 'trial de novo' [as used in *Chandler* ] demonstrates that a [federal employee] who brings a ["civil action"] ... is not entitled to limit the Court's review to the issue of remedy only." *Timmons,* 314 F.3d at 1233. For example, Black's Law Dictionary defines "trial de novo" as "[a] new trial on the entire case--that is, on both questions of fact and issues of law--*conducted as if there had been no trial in the first instance.*" Black's Law Dictionary 1544 (8th ed.2004) (emphasis added). This definition makes clear that the federal employee's right to bring a "civil action" does not include the right to seek only an additional remedy; for all practical purposes (and with one caveat discussed below), a trial de novo proceeds as if no earlier proceedings had been completed at all. Numerous Supreme Court cases use the term "trial de novo" in the same manner. *See, e.g., Colten v. Kentucky,* 407 U.S. 104, 116-117, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (noting that "trial de novo" represents a "completely fresh determination of [the issues]" during which "the *de novo* court [is not] asked to find error in another court's

work"); *see also Timmons,* 314 F.3d at 1233 (collecting other examples of the Supreme Court's usage of the term "trial de novo" to indicate de novo judicial examination of the entire case). Such usages are inconsistent with the view that the federal-employee plaintiff may seek to relitigate only a part of his discrimination claim.

**\*10** Third, additional language from *Chandler* implies that the phrase "trial de novo" entails a de novo examination of both liability and the remedy. For example, in response to the agency's argument in *Chandler* that permitting federal employees to obtain a trial de novo after the OFO had already ruled on their claims would be an inefficient allocation of judicial resources, the Court responded, in part, by noting that "[p]rior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial *de novo.* Moreover, ... many potential issues can be eliminated by stipulation or in the course of pretrial proceedings in the District Court." *Chandler,* 425 U.S. at 863 n. 39 (citations omitted). If the Supreme Court had believed that the employee need not even put the employer's underlying discrimination at issue, there would be no need to admit prior findings as *evidence,* because the employer's discrimination would not be relevant in the case. *See Timmons,* 314 F.3d at 1235. The fact that administrative findings are merely evidence-- that, like any other evidence, can be accepted or rejected by the trier of fact--requires the conclusion that the federal-employee plaintiff must put his

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

employing agency's underlying discrimination at issue in the case. [FN16]

### 2.

**Laber** does not mount a serious challenge to this conclusion. Rather, he asserts that we should continue to adhere to our decisions in *Pecker* and *Morris*. [FN17] We cannot agree. The courts in *Pecker* and *Morris* did not analyze the statutory language, nor did they address the implications of *Chandler*. Rather, the only authority they cited in support of their holdings were *Moore v. Devine,* 780 F.2d 1559 (11th Cir.1986), *Houseton v. Nimmo,* 670 F.2d 1375 (9th Cir.1982), and *Haskins v. United States Dept. of the Army,* 808 F.2d 1192 (6th Cir.1987). *See Pecker,* 801 F.2d at 711 n. 3; *Morris,* 985 F.2d 145-46. These cases, however, lend no support to *Pecker* and *Morris.*

In *Moore,* the federal-employee plaintiff prevailed before the OFO on the issue of liability but was unsatisfied with the OFO's remedial award. 780 F.2d at 1561. He filed a civil action, asking the district court to "conduct a hearing on the merits of [his claim]." *Id.* After a bench trial, the district court entered judgment in favor of the employing agency. *Id.* The plaintiff appealed, arguing that the district court was bound by the OFO's finding of discrimination. *Id.* at 1562. The Eleventh Circuit carefully dissected Title VII and its accompanying regulations and explained, as we have, that federal employees who are aggrieved by an OFO decision may file either (1) a civil action seeking de novo consideration of his claim, or (2) accept the OFO decision and, in the event

the agency does not comply, file a suit for enforcement in the district court. In a suit for enforcement, the court observed, the plaintiff does not put the OFO's underlying finding of liability at issue. *Id.* at 1564 ("[A]n employee who seeks redress of an agency's refusal to comply with [the OFO's decision] .... may request enforcement by the district court without requesting and trying the merits of the claim."). By contrast, the plaintiff before it had specifically asked the district court to evaluate his entire claim de novo. *Id.* ("[W]here ... the employee files a complaint asking the district court to consider the case on the merits and proceeds to trial de novo of the very claims resolved by the [OFO], he or she cannot complain when the district court independently resolves the claim on the merits."). In this situation, the court concluded that the district court did not err in issuing judgment against the plaintiff. *Id.*

**\*11** In *Houseton,* the federal-employee plaintiff prevailed against her employing agency before the OFO on the issue of discrimination and liability and filed an action in federal court seeking enforcement of the OFO's remedial award. 670 F.2d at 1377. The district court ordered enforcement, and the Ninth Circuit affirmed without discussion. *Id. at 1378.* The court in *Houseton* set forth no holding, but the disposition suggests that the rule of law it applied was that the district court is bound to accept the OFO's finding of liability and its remedial award in a suit for enforcement. *See id.*

In *Haskins,* the federal-employee plaintiff prevailed before the OFO on the issue of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

liability but the OFO denied her request for damages because it found that the employing agency would not have hired the plaintiff even in the absence of discrimination. 808 F.2d at 1194. The plaintiff filed a civil action requesting "a judicial de novo determination of the facts." Id. at 1195. Her employing agency stipulated that it had discriminated against her, and the district court accordingly entered summary judgment in favor of the plaintiff on the issue of liability. Id. After a bench trial on the issue of damages, the district court entered judgment in favor of the employing agency, finding, like the OFO, that the agency would not have hired the plaintiff even absent discrimination. Id. at 1196. The plaintiff appealed, arguing that the district court's entry of summary judgment to her on the issue of liability necessarily entitled her to receive her requested damages. Id.

  The Sixth Circuit disagreed, holding that the agency's admission of liability did not encompass a corollary admission that it would have hired the plaintiff even in the absence of discrimination. The court stated that it

   [did not] take issue with the [plaintiff's] assertion that a federal employee can request a federal court to enforce a favorable EEOC order without having to risk de novo review on the merits.... Thus, the employing agency cannot challenge issues decided against it if the plaintiff does not seek de novo review. However, a plaintiff is entitled to a de novo hearing if one is requested. Chandler v. Roudebush, 425 U.S. 840, 861-64, 96 S.Ct. 1949, 48 L.Ed.2d 416 ... (1976). In such a case, the district court is not bound by the administrative findings.

Id. at 1199 and n. 4.

  As this discussion reveals, Moore, Houseton, and Hawkins simply do not bear the inference that the court in Pecker and Morris placed upon them. To be sure, Moore and Hawkins state, and Houseton suggests, that a federal-employee plaintiff can, in some circumstances, avoid de novo review of his underlying claims of discrimination. But Moore and Hawkins explicitly limit that statement to the context of a suit for enforcement, [FN18] and Houseton's facts similarly reveal that its holding is limited to the enforcement context. By citing Moore, Houseton, and Hawkins for the proposition that the federal-employee plaintiff may seek an additional remedy only, Pecker and Morris incorrectly applied to civil actions the law governing suits for enforcement.

                  3.

 *12 [12][13] For the foregoing reasons, we overrule Pecker and Morris and hold that Title VII does not authorize a federal-sector employee to bring a civil action alleging only that the OFO's remedy was insufficient. [FN19] Rather, in order properly to claim entitlement to a more favorable remedial award, the employee must place the employing agency's discrimination at issue. [FN20] In so holding, we join each of our sister circuits that have addressed the question. See Ellis v. England, 432 F.3d 1321, 1325 (11th Cir.2005) ("Here, [the plaintiff] ... sought relief under [§ 2000e-16(c) ].... As such, we reject [his] argument that he is entitled to a de novo review ... limited to the question of damages"); (William) Morris, 420

F.3d at 292 ("We hold that, when a federal employee comes to court to challenge, in whole or in part, the administrative disposition of his or her discrimination claims, the court must consider those claims *de novo,* and is not bound by the results of the administrative process...."); *Scott,* 409 F.3d at 469 (holding that "a court [may not] review a final administrative disposition's remedial award without reviewing the disposition's underlying finding of liability"); *Timmons,* 314 F.3d at 1233 (holding that "a plaintiff [who files a de novo civil action] is not entitled to litigate those portions of an EEOC decision believed to be wrong, while at the same time binding the [employing agency] on the issues resolved in his or her favor"). [FN21]

### C.

[14] Anticipating that we would overrule *Pecker* and *Morris,* the Army argues that by alleging only entitlement to additional relief, **Laber's** complaint suffers from a jurisdictional defect that deprived the district court of subject-matter jurisdiction over that claim. None of our sister circuits has directly addressed whether a complaint that does not put the employing agency's discrimination at issue but alleges entitlement to a greater remedy arising out of discrimination (1) suffers from a jurisdictional defect, *see* Fed.R.Civ.P. 12(b)(1), or, (2) instead, is either subject to dismissal for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P 12(b)(6), or, if the defendant does not move to dismiss, entitled to judgment as a matter of law under Rule 56.

In support of its argument that the defect in

**Laber's** complaint is jurisdictional, the Army cites *Chris v. Tenet,* 221 F.3d 648, 652 (4th Cir.2000). In *Chris,* the federal-employee plaintiff filed a discrimination claim with her employing agency, and the agency settled the claim. *Id.* at 649-50. The parties could not agree, however, on the amount of fees and costs, and the plaintiff filed a petition with the OFO for fees and costs. *Id.* at 650. The OFO awarded her some fees and costs, but less than she sought. *Id.* Undeterred, the plaintiff filed a claim in district court seeking additional fees and costs. *Id.* The district court dismissed the suit for want of subject-matter jurisdiction. *Id.*

**\*13** We affirmed, concluding that Title VII's jurisdiction-conferring provision--"[e]ach United States district court ... shall have jurisdiction of actions brought under this subchapter," 42 U.S.C.A. § 2000e-5(f)(1)--did not extend to actions for fees and costs only:

[T]he phrase 'actions brought under this subchapter' refers [only] to legal proceedings in a court of law to enforce the substantive rights guaranteed by Title VII, specifically the right to be free from employment discrimination on the basis of race, color, religion, sex, or national origin.... [A]n 'action brought under this subchapter' ... must involve a claim to remedy an unlawful employment practice, rather than contain only a single claim for attorney's fees and costs.

*Id.* at 652 (emphasis added). The Army argues that a claim for additional relief only, like a claim for attorney's fees and costs only, is not an "action [ ] under [Title VII]" sufficient to confer subject-matter jurisdiction in the district court. 42 U.S.C. §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2000e-5(f)(1).

 We disagree. Even assuming we agreed with the Army's extension of *Chris,* that case held only that subject-matter jurisdiction was lacking *under § 2000e-5(f)(1).* Because, according to the court in *Chris* ' description of the issue before it, Chris did not argue that subject-matter jurisdiction existed *under 28 U.S.C.A. § 1331* (West 1993) ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."), the court in *Chris* did not consider whether § 1331 could have been an alternate source of subject-matter jurisdiction. *Chris* therefore did not hold that subject-matter jurisdiction is lacking under § 1331 for a claim of attorney's fees and costs only, much less that subject-matter jurisdiction is lacking under § 1331 for a claim of additional relief only. *Cf. Hagans v. Lavine,* 415 U.S. 528, 533 n. 5, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions *sub silentio,* this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us.").

 [15][16] Moreover, since *Chris* was decided we have held that § 1331 provides an additional jurisdictional basis for suits arising under Title VII, *see Venkatraman v. REI Sys., Inc.,* 417 F.3d 418, 420 (4th Cir.2005), and a strong majority of our sister circuits has held the same, *see Burgh v. Borough Council of Borough of Montrose,* 251 F.3d 465, 469 (3d Cir.2001); *Smith v. Ashland, Inc .,* 250 F.3d 1167, 1169 (8th Cir.2001); *English v. Colo.*

*Dept. of Corr.,* 248 F.3d 1002, 1007 (10th Cir.2001); *Rutherford v. City of Cleveland,* 137 F.3d 905, 908 (6th Cir.1998); *Saunders v. Venture Stores, Inc.,* 56 F.3d 771, 772 (7th Cir.1995); *Vera-Lozano v. Int'l Broad.,* 50 F.3d 67, 68 (1st Cir.1995); *Intlekofer v. Turnage,* 973 F.2d 773, 774 (9th Cir.1992); *Palmer v. Dist. Bd. of Tr. of St. Petersburg Junior Coll.,* 748 F.2d 595, 596 (11th Cir.1984). A district court has subject-matter jurisdiction under § 1331 when "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." *Bell v. Hood,* 327 U.S. 678, 681, 685, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Because, as this opinion reveals, resolution of **Laber's** claim for additional relief required interpretation of Title VII, a federal law, the district court had subject matter jurisdiction over **Laber's** claim under § 1331. Of course, district courts may lack jurisdiction over future claims similar to **Laber's** claim under the insubstantiality doctrine. *See Hagans,* 415 U.S. at 536-37 ("[F]ederal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly insubstantial, or no longer open to discussion." (internal citations and quotation marks omitted)). But we cannot say that the federal question presented by **Laber's** complaint--whether a federal-employee plaintiff who prevails before the OFO may seek only additional relief in the district court-- was so insubstantial as to deprive the district court of jurisdiction under § 1331,

especially considering that *Pecker* and *Morris* arguably *authorized* **Laber's** complaint. *Cf.* *Dixon v. Coburg Dairy,* 369 F.3d 811, 817 n. 5 (4th Cir.2004)* (en banc) (concluding that an allegation that the First Amendment applies to private employers "would be too insubstantial to invoke federal question jurisdiction because the First Amendment does not apply to private employers"). We therefore decline to extend *Chris* beyond its limited facts, and, because resolution of **Laber's** claim required interpretation of a federal law, we conclude that the district court had subject-matter jurisdiction over **Laber's** claim for additional relief and that the Army was entitled to judgment as a matter of law on the claim. [FN22]

IV.

**\*14** **Laber** next argues that the district court abused its discretion in denying his motion for reconsideration and to amend. He argues that justice requires that he be given the opportunity to amend his complaint to put the Army's underlying religious discrimination at issue.

A plaintiff may amend his complaint one time as a matter of course before the defendant files a responsive pleading. Fed.R.Civ.P. 15(a). Once the defendant files a responsive pleading, however, the plaintiff may amend his complaint only by leave of the court or by written consent of the defendant, *id.,* but Rule 15(a) directs that leave to amend "shall be freely given when justice so requires." This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities. *See*

*Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."); *Ostrzenski v. Seigel,* 177 F.3d 245, 252-53 (4th Cir.1999) ("The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that [the] plaintiff be given every opportunity to cure a formal defect in his pleading." (quoting 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2d ed.1990))).

[17] We have interpreted Rule 15(a) to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *See* *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir.1986) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). [FN23] Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." *Id.* An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred. *Davis v. Piper*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Aircraft Co.,* 615 F.2d 606, 613 (4th Cir.1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case.").

[18][19] Delay alone, however, is an insufficient reason to deny the plaintiff's motion to amend. *See Davis,* 615 F.2d at 613. For this reason, a district court may not deny such a motion simply because it has entered judgment against the plaintiff--be it a judgment of dismissal, a summary judgment, or a judgment after a trial on the merits. *See, e.g., Foman,* 371 U.S. at 182 (reversing district court's denial of motion to amend made after the district court entered judgment of dismissal); 6 Charles Allen Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1488 (2d ed.1990) (collecting cases); *cf. Ostrzenski,* 177 F.3d at 252-53 (4th Cir.1999) (noting that district court should not dismiss a complaint with prejudice under Fed.R.Civ.P. 12(b)(6) without first giving the plaintiff leave to amend). Instead, a post-judgment motion to amend is evaluated under the same legal standard as a similar motion filed before judgment was entered-- for prejudice, bad faith, or futility. *See Foman,* 371 U.S. at 182; *Johnson,* 785 F.2d at 509-510 (dicta). A moment's reflection reveals, however, that the further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant or that a court will find bad faith on the plaintiff's part. *Adams v. Gould,* 739 F.2d 858, 864 (3d Cir.1984) ("[T]he factors that must guide our review

may be affected by the fact that a summary judgment was granted before plaintiffs sought leave to amend their complaint.").

*15 [20][21][22] There is one difference between a pre- and a post-judgment motion to amend: the district court may not grant the post-judgment motion unless the judgment is vacated pursuant to Rule 59(e) or Fed.R.Civ.P. 60(b). *See Cooper v. Shumway,* 780 F.2d 27, 29 (10th Cir.1985) ("[O]nce judgment is entered the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed.R.Civ.P. 59(e) or 60(b)."); *Scott v. Schmidt,* 773 F.2d 160, 163 (7th Cir.1985) (holding same); 6 Charles Allen Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1489; *see also Murrow Furniture Galleries, Inc. v. Thomasville Furniture Indust., Inc.,* 889 F.2d 524, 526 n. 3 (4th Cir.1989) ("The Court denied their [Rule] 59(e) motion, thereby effectively denying their [Rule 15(a) ] motion as well."); *DeBuit v. Harwell Enters., Inc.,* 540 F.2d 690, 692 (4th Cir.1976) ("[T]he final order of the court disposed of all of the issues between these two plaintiffs and the defendants, and since no appeals were taken the judgment became a finality and terminated the case as to them. Under these circumstances, the case could only be reopened or the order revised under the provisions of Rule 59 or 60...."). A conclusion that the district court abused its discretion in denying a motion to amend, however, is sufficient grounds on which to reverse the district court's denial of a Rule 59(e) motion. *See Foman,* 371 U.S. at 182 (reversing denial of motion for reconsideration

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of judgment of dismissal where district court abused its discretion in denying motion to amend); *Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597 n. 1 (5th Cir.1981)* ( "Where judgment has been entered on the pleadings, a holding that the trial court should have permitted amendment necessarily implies that [the] judgment ... was inappropriate and that therefore the motion to vacate should have been granted."); *Adams, 739 F.2d at 864* (adopting standard set forth in *Dussouy* ). Regardless of whether the motion to amend is filed pre- or post-judgment, we review for abuse of discretion the district court's decision on a motion to amend. *See Foman, 371 U.S. at 182.*

[23] We believe that under the unusual circumstances presented here, **Laber's** motion to amend must be granted. First, and most important here, there is no indication that **Laber's** omission from his original complaint of the legal theory he now seeks to pursue was in bad faith. In fact, **Laber's** original complaint was arguably proper under *Pecker* and *Morris.* **Laber's** case is not a run-of-the-mill case where the plaintiff's first theory of recovery is based on *his own* reading of our cases and it turns out that he misinterpreted how that theory would apply to the facts of his case. Instead, while **Laber** indeed misinterpreted how we would rule, his theory presented a close enough question under our prior cases that *we* deemed it necessary to grant rehearing en banc to overrule those cases. Moreover, **Laber's** diligence in filing his motion to amend after the district court entered summary judgment

dispels any inference of bad faith.

***16** Second, the record reveals that the Army would not have been prejudiced by **Laber's** proposed amendment. Although the case progressed to summary judgment, the Army conducted no significant discovery, likely because of the factual development of **Laber's** claims that occurred in the administrative proceedings. Any discovery it did conduct need not be duplicated because **Laber's** proposed complaint does not put any new facts at issue but merely states an "alternative theory" for recovery. *Foman, 371 U.S. at 182* (reversing district court's entry of judgment of dismissal and denial of plaintiff's motion to amend where "the amendment would have done no more than state an alternative theory for recovery."). Moreover, the Army made no argument that it would be prejudiced if **Laber** were granted leave to amend.

[24][25][26] Third, the amended complaint is not futile. Although not artfully drafted, it does allege a cause of action for the Army's alleged religious discrimination. While the Army now argues that **Laber's** religious discrimination claim is untimely because he filed his complaint more than 90 days after the OFO's April 10, 2000 denial of **Laber's** motion for reconsideration, it did not raise this argument in opposing **Laber's** motion to amend below. [FN24] In the absence of exceptional circumstances, none of which the Army argues are present here, nonjurisdictional [FN25] arguments not made to the district court are waived on appeal. *See Holland v. Big River Minerals Corp., 181*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.3d 597, 605 (4th Cir.1999).

Because **Laber** did not act in bad faith, his proposed amendment would not prejudice the Army, and the amendment is not futile, we conclude that the district court abused its discretion in denying **Laber's** motion for reconsideration and to amend. [FN26]

V.

**Laber** finally argues that the district court erroneously granted summary judgment to the Army on his claims of age discrimination and retaliation. He contends that (a) he has made a prima facie case of age discrimination because he was qualified for the job in question and (b) Scott knew about his prior EEO activity before making the decision not to select him for the position. [FN27] We review this argument under the standards of review for summary judgment as set forth in Part III, *supra.*

A.

[27][28][29] The ADEA creates a cause of action for certain [FN28] federal employees over the age of 40 who allege discrimination on the basis of age. *See* 29 U.S.C.A. § 633a. We apply the familiar *McDonnell Douglas* burden-shifting framework to resolve claims of age discrimination when the plaintiff produces no direct or circumstantial evidence of discrimination sufficient to warrant a "mixed-motive" analysis. *See Desert Place, Inc. v. Costa,* 539 U.S. 90, 101-02, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); *Hill,* 354 F.3d at 285. Under this framework, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802. To establish such a prima facie case, a plaintiff must demonstrate that: (1) he was a member of a protected class, *i.e.,* that he was at least 40 years old; (2) his employer had an open position for which he applied and was qualified; (3) he was rejected despite his qualifications; and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the ADEA. *See O'Conner v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 310-312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

**\*17** [30][31] Once a plaintiff makes this prima facie case, he creates a presumption of discrimination, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *McDonnell Douglas,* 411 U.S. at 802-03. If the defendant satisfies this burden, the presumption disappears and the plaintiff must show that the articulated reason is a pretext for age discrimination. *See Reeves,* 530 U.S. at 142-43; *McDonnell Douglas,* 411 U.S. at 804. To do so, the plaintiff must do more than simply show the articulated reason is false; he must also show that the employer discriminated against him on the basis of age. *See Reeves,* 530 U.S. at 146- 47. In some cases, however, proof that the employer's reason is false is sufficient to show age discrimination when combined with the plaintiff's prima facie case. *See id.* at 147-48 (noting that "once the employer's justification

has been eliminated, discrimination may well be the most likely explanation").

[32] The district court held that **Laber** had not made a prima facie case of age discrimination because he failed to show he was qualified for the Operations Research Analyst position. **Laber** argues that he was qualified for the position because the civilian personnel office concluded that he was "minimally qualified" for the position. The record reveals, however, that the phrase "minimally qualified" does not mean that the applicant is *actually* qualified for the job in question. Instead, it means that the applicant is qualified for the *generic* duties of the job based solely on the pay grade and title, but it does not necessarily mean that he is qualified for the specific requirements of the *particular* job for which applications are being sought. While the record is full of evidence to this effect, the testimony of Roxanne Dent, a staffing specialist, makes the point succinctly:

> A staffing specialist [at the civilian personnel office] made a determination to [**Laber's**] basic minimum qualifications.... But that doesn't mean that the manager can't also .... pick something special that's in his job, only in his job description and look for that kind of experience from the people that we give them. We try to give them the best qualified ..., and then he or she's got [sic] to decide from there and look for things that they need this person to be able to do.

(J.A. at 502-03.) The testimony that **Laber** was "minimally qualified" for the generic position of Operations Research Analyst does not, therefore, support **Laber's** argument that he was qualified to perform the specific

requirements of the Operations Research Analyst position for which Scott was interviewing.

Moreover, the record shows that Scott determined, after reviewing **Laber's** supplemental information, that **Laber** was "not eligible" for the Operations Research Analyst position Scott sought to fill. (J.A. at 470.) Scott testified that the position required cost benefit analysis, functional economic analysis, and independent cost estimates of the Army's weapons systems, and that **Laber's** Form 2302 revealed that **Laber** did not have the requisite education, experience, or training for the job requirements. [FN29] Short of his conclusory assertions that he was able to conduct the appropriate analyses and make the appropriate estimates, **Laber** does not present any evidence that his education, experience, or training qualified him for the job. *Cf. Evans v. Tech. Applications & Serv. Co.,* 80 F.3d 954, 960 (4th Cir.1996) ("[The employee's] unsubstantiated allegations and bald assertions concerning her own qualifications ... fail to ... show discrimination."). We therefore conclude that **Laber** cannot satisfy his burden of showing a prima facie case of age discrimination.

### B.

**\*18** [33][34][35][36] Like claims of age discrimination, we also apply the *McDonnell Douglas* framework to claims of retaliation. [FN30] *See Beall v. Abbott Labs.,* 130 F.3d 614, 619 (4th Cir.1997). To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in protected

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

activity; (2) an adverse employment action was taken against him; and (3) there was a causal link between the protected activity and the adverse action. *See id.* If the plaintiff establishes a prima facie case, we then apply the remainder of the *McDonnell Douglas* test--whether the employer has produced a legitimate, non-discriminatory reason for the employee's non-selection and, if so, whether the employee can show that the reason is false, and, ultimately, that the employer retaliated against him. *See id.*

The district court held that **Laber** had not made a prima facie case of retaliation because the evidence showed that **Laber** informed Scott about his prior EEO activity after Scott made the decision not to select **Laber** for the position. We need not decide whether this holding was erroneous. *See Jackson v. Kimel, 992 F.2d 1318, 1322 (4th Cir.1993)* ("In reviewing a grant of summary judgment, we can affirm on any legal ground supported by the record and are not limited to the grounds relied on by the district court."). Even assuming that **Laber** demonstrated a prima facie case of retaliation, the Army satisfied its burden of producing a legitimate, non-discriminatory reason for his non-selection by introducing evidence that **Laber** was not qualified for the job, *Evans, 80 F.3d at 960* ("[E]mployee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision."), and, as we concluded in the age discrimination context, **Laber** did not introduce sufficient evidence to create a factual issue on whether he was qualified for

the specific position Scott was seeking to fill. We therefore conclude that **Laber** did not satisfy his burden of demonstrating that the Army's proffered justification was false.

VI.

For the foregoing reasons, we reverse the district court's denial of **Laber's** motions for reconsideration and to amend, vacate the district court's grant of the Army's motion for summary judgment on **Laber's** claim for additional relief, and remand with instructions to allow **Laber** to amend his complaint to put at issue the Army's alleged religious discrimination. We also affirm the grant of summary judgment to the Army on **Laber's** claims of age discrimination and retaliation.

*REVERSED IN PART, VACATED AND REMANDED IN PART, AND AFFIRMED IN PART.*

WILKINSON, Circuit Judge, concurring:

I am pleased to concur in Judge Williams's thorough opinion in this case. I do note that motions filed post-judgment for leave to amend a complaint are not favored under law. It takes a great deal of time and effort for a party to win any judgment. This effort should not be routinely undone after a decision of the district court alerts a losing party to the deficiencies in its case.

**\*19** Provision is made in the Rules for automatic amendment of the complaint in certain circumstances and for a liberal granting of leave to amend in other

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

circumstances, *see* Fed.R.Civ.P. 15(a), but the interest in finality that attaches to every judgment must of necessity weigh in the exercise of the district court's discretion in a filing such as this. *See, e.g., Benzon v. Morgan Stanley Distribs., Inc.,* 420 F.3d 598, 613 (6th Cir.2005) (noting that "in the post-judgment context" the court "must also take into consideration the competing interest of protecting the finality of judgments and the expeditious termination of litigation") (internal quotation marks omitted); *Doe v. Howe Military Sch.,* 227 F.3d 981, 989 (7th Cir.2000) (although "leave to amend shall be freely granted when justice so requires, justice may require something less in post-judgment situations than in pre-judgment situations") (internal quotation marks omitted); *Vielma v. Eureka Co.,* 218 F.3d 458, 468 (5th Cir.2000) (noting that the district court's discretion to allow amendments "narrows considerably after entry of judgment"). Abuse of discretion is, after all, a deferential standard, and district courts are in the best position to determine "when justice so requires" that a litigant be permitted to amend his complaint. Fed.R.Civ.P. 15(a).

 In this case, I concur in Part IV's reversal for abuse of discretion solely because a special circumstance exists--namely, as Judge Williams points out, that *Morris v. Rice,* 985 F.2d 143 (4th Cir.1993), and *Pecker v. Heckler,* 801 F.2d 709 (4th Cir.1986), appeared to squarely and affirmatively authorize plaintiff's attempt to seek additional relief without putting the agency finding of defendant's liability at issue. Indeed, **Laber's** initial complaint may have been proper prior

to today's ruling, and this would have obviated the need to amend the complaint in the first place. In this unique set of circumstances, I agree that **Laber** should be allowed to amend his complaint. In ordinary circumstances, post-judgment motions for leave to amend serve only to string litigation out.

 WIDENER, Circuit Judge, concurring and dissenting:

 I respectfully dissent from the majority holding that permits the plaintiff to assert, or to amend his complaint to again assert, his claim of religious discrimination, he having previously and successfully prosecuted the same and accepted the administrative award. I agree with the district court that it was without subject matter jurisdiction as to this aspect of the case. **Laber** had his day in court at least when he accepted the administrative award.

 I concur in the majority decision to overrule the *Pecker* and *Morris* cases.

 I concur in the majority decision affirming the grant of summary judgment to the defendant on plaintiff's claims of age discrimination and retaliation.

 NIEMEYER, Circuit Judge, concurring in part and dissenting in part:

 I concur in Parts I, II, III, and V of the majority opinion, and I dissent from Parts IV and VI. For the reasons given below, I would affirm the judgment of the district court.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

I

*20 Stan **Laber,** a civilian employee of the U.S. Army, claims that on two occasions the Army denied him promotion by reason of his religion and age and that the Army retaliated against him for filing claims with the EEOC, in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. The EEOC's Office of Federal Operations found that the Army did in fact discriminate against **Laber** based on his religion and awarded him relief, albeit not all that he had claimed. The EEOC, however, ruled against **Laber** on his age-discrimination claim and his retaliation claim. After **Laber** filed various motions for reconsideration and for enforcement of the remedies awarded, the EEOC ultimately affirmed an award in favor of **Laber** for (1) over $9,000 in backpay, (2) a position as an industrial specialist in Germany, and (3) over $15,000 in attorneys fees. After **Laber** accepted all of the agency-awarded remedies, he commenced this action contending that the agency-awarded remedies for the religion-discrimination claims were inadequate and prosecuting his age-discrimination and retaliation claims *de novo.*

On the Army's motion for summary judgment, the district court dismissed all of **Laber's** claims, concluding with respect to his religion-discrimination claim that the court did not have jurisdiction to review a claim made simply for *additional* remedies where "the substantive claims were decided at the administrative level and where the plaintiff accepted the relief afforded him at the administrative level." The court concluded with respect to the age-discrimination and retaliation claims that **Laber** lacked sufficient proof.

In dismissing **Laber's** claim that his agency-awarded remedies for religion-based discrimination were inadequate, the district court reasoned that because Title VII authorized only a *de novo* proceeding in court, the court did not have jurisdiction to consider his claim simply to enhance the agency remedies. Its reasoning parallels that which is written in Part III of the majority opinion. In addition, the district court concluded that it did not have jurisdiction because the plaintiff "*has accepted* the remedies afforded him in the administrative process" (emphasis added). As the court explained:

> Plaintiff accepted relief at the administrative level including attorney's fees, Sunday premium pay, and a position in Germany. Because he accepted the remedies afforded him at the administrative level, plaintiff cannot now request additional relief ... because he is unhappy with the award he received in the administrative process.

II

The district court's reasoning and conclusions were correct, and I take issue with only its final observation that as a result of its reasoning and conclusions, it did not have jurisdiction. I would conclude that its reasoning and conclusions lead more clearly to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. But the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

district court's breach of the line between Rule 12(b)(1) and Rule 12(b)(6) does not require us to reverse the district court's conclusion to dismiss this case. *See Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co.,* 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912 (1951) (noting, "[a]s frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action"). Indeed the line separating the two has recently become even more indefinable. To recognize this, one need only compare the holding of *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), where the Court held that the question whether § 505(a) of the Clean Water Act allows suits for wholly past violations was *a matter of jurisdiction,* with the holding in *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), where the Court held that the question whether the Emergency Planning and Community Right-to-Know Act of 1986 allows suits for wholly past violations was *a merits question* disposable under Rule 12(b)(6). Moreover, it would be a meaningless act for us to remand for dismissal under Rule 12(b)(6) rather than Rule 12(b)(1). [FN*]

**\*21** Whether under Rule 12(b)(1) or Rule 12(b)(6), the district court was correct in concluding that **Laber's** case had to be dismissed because he could not assert a *de novo* claim under Title VII. The possibility of a *de novo* trial was foreclosed by his acceptance of the agency remedies. Moreover, this is precisely the conclusion that must be

drawn from the majority opinion in this case.

Explaining the holding in *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), to conclude that the plaintiff's cause of action in a case such as the one before us can only be *de novo,* the majority has concluded, "The plain meaning of the term 'trial *de novo* ' as used in *Chandler* demonstrates that a federal employee who brings a'civil action' ... is not entitled to limit the Court's review to the issue of remedy only." *Ante* at 19 (internal quotation marks, alterations, and citation omitted). The majority thus reasons that "*the federal employee's right to bring a 'civil action' does not include the right to seek only an additional remedy;* for all practical purposes ... a trial *de novo* proceeds as if no earlier proceedings had been completed at all." *Ante* at 19 (citing *Colten v. Kentucky,* 407 U.S. 104, 116-17, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (noting that trial *de novo* represents a "completely fresh determination of [the issues]" (emphasis added))); *see also Timmons v. White,* 314 F.3d 1229, 1233 (10th Cir.2003) (collecting Supreme Court decisions supporting the same).

Thus to state a cause of action that would entitle him to a trial *de novo,* **Laber** would have to be prepared to place all issues, both liability and remedy, on the table anew. Yet he could not place remedy issues on the table anew. He has accepted the agency-awarded remedies, which are not now retrievable. Thus, if in a trial *de novo* **Laber** were to lose on his religion-discrimination claim, he would stand to lose nothing, having already accepted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and received agency-awarded remedies. **Laber** would therefore be left with only the possibility of seeking *an additional remedy.* Yet this type of claim is just what the majority forecloses when it states, "the federal employee's right to bring a civil action does not include the right to seek only *an additional remedy.*" *Ante* at 19 (emphasis added). Despite this accurate statement of law, the majority, by remanding with a right to amend, gives **Laber** a new claim with no downside. I conclude that this is plain error.

III

In urging affirmance of the district court's ruling, the Army also contends that "there is no provision within Title VII ... that allows a complainant to accept certain portions of an EEOC award and seek *de novo* judicial review of the rest." The Army argues that it would be inconsistent to allow **Laber** to keep the remedies awarded by an agency and at the same time seek *de novo* judicial review. While this argument rings of estoppel or mootness, the Army nonetheless suggests that these conclusions should lead to dismissal for lack of jurisdiction.

**\*22** Regardless of the proper legal pigeonhole in which to place the Army's argument, I agree with the Army--and indeed the district court--that **Laber** "cannot have his cake and eat it too." He cannot retain the remedy awarded him by the agency and at the same time urge us to permit him to pursue a *de novo* judicial complaint; they are mutually inconsistent.

Even as the Army has mislabeled its

argument as jurisdictional, the mislabeling does not bury the point. Because **Laber** cannot fulfill the elements of his *de novo* claim by putting all the remedies at risk, he must be barred not only by his inability to allege a claim for *de novo* remedies, but also by notions of estoppel or equitable mootness. *See, e.g., MAC Panel Co. v. Virginia Panel Corp., 283 F.3d 622, 625 (4th Cir.2002); Central States Pension Fund v. Central Transport, Inc., 841 F.2d 92, 95 (4th Cir.1988).*

In *Central States,* a pension plan sought to overturn a bankruptcy court's confirmation of a plan for reorganization of a trucking company. Pending appeal, however, the pension plan did not file a supersedeas bond, as required for a stay, and by the time the case reached this court, the plan had been substantially implemented. In response to the pension fund's argument that limited relief might still be appropriate from us, we stated that even limited relief "would require the Class 6 creditors to surrender their advantage," which they had not done. *Id.* at 96. In dismissing the appeal, we stated:

> Orders confirming plans of reorganization do not become immune from appellate review upon their partial, or even substantial, implementation. On the other hand, dismissal of the appeal on mootness grounds *is required* when implementation of the plan has created, extinguished or modified rights, particularly of persons not before the court, to such an extent that effective judicial relief is no longer practically available.
> *Id.* (internal citations omitted) (emphasis

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 348289                                                                Page 32
--- F.3d ----, 2006 WL 348289 (4th Cir.(Va.))
**(Cite as: 2006 WL 348289 (4th Cir.(Va.)))**

added). Articulating the doctrine more completely in *MAC Panel,* we said:

> [T]he doctrine of *equitable* mootness is a pragmatic principle, grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable.
> 283 F.3d at 625.

While I continue to believe that **Laber** should not now be allowed to pursue his claim because he cannot set forth a *de novo* claim upon which relief can be granted and therefore would affirm the district court on that basis, I am just as prepared to affirm the dismissal under the doctrine of equitable mootness. Although the Army did not specifically label its argument with the name of that doctrine, it nonetheless vigorously argued the substance of the point in its brief, just as the district court relied on it to justify its dismissal.

For all of these reasons, I would affirm the judgment of the district court granting summary judgment to the Army on **Laber's** religious-discrimination claim.

> FN1. It is unclear exactly what type of EEO activity qualifies an employee as a priority candidate. We need not resolve this ambiguity here, however, because the evidence demonstrates, and the Army does not contest, that however he became one, **Laber** was a priority candidate.

> FN2. At the time **Laber** filed his judicial complaint, his age discrimination and retaliation claims were not yet exhausted. Those claims became exhausted, however, on June 24, 2003, when the OFO decided his appeal on those claims.

> FN3. Some concern arose at the en banc oral argument over whether **Laber's** complaint actually put the Army's alleged religious discrimination at issue. We believe, like the district court, that it did not. As noted in the text, while the complaint does state that the Army discriminated against **Laber** on the basis of religion, it does so only as background information; in other words, while **Laber** alleges that the underlying discrimination occurred, he explicitly refrained from seeking a judicial determination of the discrimination. **Laber's** statement that he "is not appealing the finding of discrimination," (J.A. at 7), had the same effect as if **Laber** simply had not stated that the Army discriminated against him at all.
> Other documents in the record support the conclusion that **Laber** did not put the Army's underlying religious discrimination at issue. In **Laber's** memorandum in support of his motion for summary judgment, he described his suit in the following manner:
> [T]he [Army] has refused to pay Plaintiff his back pay and benefits stemming from Plaintiff's successful

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[OFO] complaint based on his not being reassigned to a position in Israel that became vacant in 1989. The [OFO] ordered Plaintiff to be made whole but allowed [the Army] to make the relevant determination and found that [the Army] met all of the [OFO's] requirements....

Plaintiff maintains that [the Army] failed to provide him all of the back pay and benefits he is due for the period 1990 to 2004 and that [OFO's] decision [that the Army has fulfilled its obligations] is in error.

(Mem. in Supp. of Pl.'s Mot. for Summ. J. at 1.) Similarly, in his pre-trial Statement of Uncontested Facts, **Laber** stated that he "filed [suit] in Federal Court to force the Army to meet its obligations." (Pl.'s Statement of Uncontested Facts at 4.) Likewise, in a filing in support of his motions for reconsideration and to amend, **Laber** argued that "the bottom line is that [the Army] simply refused to pay the [compensation to which I am due.] Plaintiff respectfully requests the Court to rule on the basis of the make whole issue...." (Supplemental Mem. in Supp. of Pl.'s Motions For Leave to Amend and Recons. at 2.) These statements clarify that **Laber's** religious discrimination claim was one for additional relief only. In addition, the Army early (and often) characterized that claim as one for "additional compensation." (Mem. in Supp. of Def.'s Mot. For Summ. J. at 1.) Not once before the district court's

grant of summary judgment did **Laber** attempt to disabuse either the Army or the district court of any alleged misunderstanding of his religious discrimination claim.

As discussed below, **Laber** argued to the district court that he intended to put the Army's religious discrimination at issue. In interpreting a pro se complaint, however, our task is not to discern the unexpressed intent of the plaintiff, but what the words in the complaint mean. And while we must construe pro se complaints liberally, *see Hemphill v. Melton,* 551 F.2d 589, 590-91 (4th Cir .1977), to hold that **Laber's** complaint seeks a judicial determination of the Army's alleged religious discrimination, would not be liberal interpretation, but complete rewriting.

FN4. It appears from the record that neither party brought *Pecker v. Heckler,* 801 F.2d 709 (4th Cir.1986), or *Morris v. Rice,* 985 F.2d 143 (4th Cir.1993), to the district court's attention.

FN5. Some concern also arose at the en banc oral argument over whether the district court's grant of the Army's motion for summary judgment on **Laber's** claim for additional relief was actually a dismissal of that claim. Although the district court's opinion is not crystal clear on this point, a review of the record convinces us that the district court did grant summary

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

judgment on that claim. *See In re Tomlin,* 105 F.3d 933, 940 (4th Cir.1997) ("When an order is ambiguous, a court must construe its meaning, and in so doing may resort to the record upon which the judgment was based." (internal quotation marks omitted)). In its written opinion, the district court concluded that "the [Army was] entitled to *judgment* as a matter of law" on the claim for additional relief. (J.A. at 40-41 (emphasis added).) The district court also indicated that it "granted [the Army's] Motion for *Summary Judgment*" and "direct[ed] the clerk to enter "*JUDGMENT* in favor of the Army" (J.A. at 56a-, 56-c (emphases added).) Likewise, the docket sheet reflects that "JUDGMENT" was entered against **Laber** on the claim. (J.A. at 5.) While the district court also, and confusingly, stated in its opinion that **Laber's** religious discrimination claim "must be dismissed" because of the lack of subject-matter jurisdiction, (J.A. at 49), the docket sheet demonstrates that the district court did not actually dismiss that claim until after it had already granted judgment to the Army. (J.A. at 5.) The record therefore clarifies that the district court actually did not dismiss **Laber's** claim for additional relief, but rather granted judgment on that claim to the Army. Of course, if the district court believed that it lacked subject-matter jurisdiction over **Laber's** claim for

additional relief, the proper course would have been to dismiss the claim instead of granting summary judgment on it. *Cf. Dixon v. Coburg Dairy, Inc.,* 369 F.3d 811, 819 (4th Cir.2004) (en banc) (reversing district court's entry of summary judgment and remanding for district court to remand to state court where district court lacked jurisdiction over removed claim). We do not reverse on this ground, however, because we hold, as discussed in detail below, that the district court's conclusion that it lacked subject-matter jurisdiction over the claim for additional relief was erroneous, and it therefore had the power to enter judgment for the Army.

FN6. **Laber's** motion for reconsideration also challenged the district court's grant of the Army's motion for summary judgment on his claims of age discrimination and retaliation. On appeal, however, **Laber's** arguments regarding his motion for reconsideration focus only on whether the district court correctly denied his motion to amend his religious discrimination claim. **Laber** has therefore waived any additional argument that the district court erroneously denied his motion for reconsideration as it pertained to his age discrimination and retaliation claims, *see* Fed. R.App. P. 28(a)(9) (noting that Appellant's brief must contain "contentions and the reasons for them"); *11126 Baltimore Blvd.,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Inc. v. Prince George's County, Md., 58 F.3d 988, 993 n. 7 (4th Cir.1995)* (en banc) (declining to address issues that litigant "failed to brief or argue"), and we confine our consideration of **Laber's** motion for reconsideration to the context of **Laber's** religious discrimination claim.

FN7. It is undisputed that **Laber** falls within the class of federal employees protected by Title VII.

FN8. Title VII also creates a right of action for state employees, *see, e.g.,* 42 U.S.C.A. § 2000e-5(e) (West 2003), but this right does not figure in this appeal.

FN9. The federal employee may also opt-out of the administrative process at this point by filing a de novo civil action. *See* 42 U.S.C.A.2000e-16(c) (West 2003); 29 C.F.R. § 1614.407(a) (2004) (providing that employee may file a civil action within 90 days if no appeal is filed from the agency's final decision). Failure to do so does not prejudice the employee's right to file an appeal of the OFO's decision on appeal of the employing agency's findings. *See, e.g.,* 29 C.F.R. § 1614.407(c) (providing that employee may file a civil action within 90 days of OFO's decision on appeal). **Laber** did not file his civil action at this point in the administrative process.

FN10. The section creating a cause of action for federal employees provides in full:

Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after [180] days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a *civil action as provided in section 2000e-5* of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

42 U.S.C.A. § 2000e-16(c) (emphasis added). Section 2000e-5 provides that a private sector employee may also bring a "civil action" alleging employment discrimination. 42 U.S.C.A. § 2000e-5(f)(1).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN11. It is unclear whether the plaintiff in *Pecker* brought a civil action or a suit for enforcement. On the one hand, the court characterized the suit as a "suit to enforce a decision of the [OFO]." 801 F.2d 709, 709 (4th Cir.1986). On the other hand, the court allowed the plaintiff to seek a greater remedy than awarded by the OFO, a form of relief that, as discussed in Part III.A.1, *supra,* is outside the scope of a suit for enforcement. In the end, the precise type of action at issue in *Pecker* makes no difference. If *Pecker* was a civil action, as we assume in the text, we would overrule its holding allowing federal employee plaintiffs in such actions to litigate before the district courts only the issue of additional relief. If, on the other hand, *Pecker* was a suit for enforcement, its holding that a federal employee plaintiff in such actions may seek greater relief in the district court than that awarded by the OFO was incorrect.

FN12. It is arguable that the broad statements in *Pecker* and *Morris* were dicta because the employing agency in both of those cases admitted liability during the administrative process and the employee actually put the employer's discrimination at issue. The rule announced in those cases did not turn on this fact, however, and we think the question of whether that rule was dicta or holding is close enough to require us to overrule, instead of distinguish, the cases.

FN13. One of the provisions governing the § 2000e-5 "civil action" states:

*If the court finds* that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

42 U.S.C.A. § 2000e-5(g)(1) (emphasis added). This section also go7verns the "civil action" created for federal employees in § 2000e-16. *See* 42 U.S.C.A. § 2000e-16(d) ("The provisions of section 2000e-5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder, and the same interest to compensate for delay in payment shall be available as in cases involving nonpublic parties.").

FN14. Title VII plaintiffs have the right to a jury trial if they seek compensatory or punitive damages.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*See* 42 U.S.C.A. § 1981a(c) (West 2003). We need not decide today whether § 1981a would require a court to award equitable relief under § 2000e-5(g)(1) if the jury's verdict included a finding of intentional discrimination. For purposes of this appeal, the import of the "court finds" language in § 2000e-5(g)(1) is simply that no one--neither the court nor the jury--may make a finding of discrimination in the civil action if the discrimination is not even put at issue in the first place.

FN15. At the time, the Civil Service Commission heard appeals from agency decisions on a federal employee's Title VII administrative complaint.

FN16. Moreover, allowing an employee to bring a civil action challenging only the OFO's remedy would thwart the goal of resolving many administrative complaints without judicial intervention that is accomplished by affording the OFO the power to require corrective action and precluding the employing agency from seeking review of the OFO decision in federal court. *See West v. Gibson,* 527 U.S. 212, 219, 119 S.Ct. 1906, 144 L.Ed.2d 196 (1999) (holding that OFO may award compensatory damages because the opposite holding would "force into court matters that the [OFO] might otherwise have resolved."). Affording

federal employees who prevail before the OFO on the question of liability but who are unsatisfied with the OFO's remedial award the right to come into federal court to seek only a greater remedy provides little, if any, disincentive from filing a civil action asserting only that their remedy was insufficient. This rule would therefore encourage, rather than discourage, resolution of suits by judicial, as opposed to administrative, means. *See Chris v. Tenet,* 221 F.3d 648, 653 (4th Cir.2000) ("[P]ermitting a suit solely for attorney's fees and costs incurred during the course of the Title VII administrative process would run counter to the congressional aim of quick, less formal, and less expensive resolution of employment disputes.").

FN17. **Laber** does argue that his claim for additional relief arising out of the Army's religious discrimination was proper because the Army admitted liability both by failing to file a motion for reconsideration of the OFO's decision and by partially complying with that decision. These arguments widely miss the mark. Because **Laber's** complaint does not seek a judicial determination of whether the Army discriminated against him, whether the Army has admitted that fact is simply irrelevant to his suit. In other words, even assuming, for the sake of argument, that the Army somehow admitted liability, **Laber** would not be excused from putting the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Army's liability at issue; rather, he would have to put the Army's alleged discrimination at issue in order for the district court to make a finding that the Army had admitted liability. Moreover, we have never held, in any context, that a failure to file a motion for reconsideration serves as an admission that the underlying decision was correct. And we cannot agree with **Laber** that the Army's compliance with the OFO's remedial award serves as an admission given that the Army has no rights to appeal the OFO decision.

FN18. In *Ellis v. England,* 432 F.3d 1321 (11th Cir.2005), the Eleventh Circuit expressly limited *Moore* to the enforcement context. *Id.* at 1324 ("In *Moore,* we ... held that, where an employee *seeks enforcement* of a favorable [OFO] ruling, we do not review the merits of the employee's claim *de novo* .... While some circuits, particularly the Fourth and the Ninth, have read our decision in *Moore* to allow fragmentary *de novo* review [in a civil action], we do not read *Moore* as permitting such fragmentary *de novo* review.").

FN19. The Army also argues that *Pecker* and *Morris* must be overruled because they allow a broad type of suit against the government in contravention of the command that waivers of sovereign immunity must be strictly construed. *See, e.g., Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). Because the text, and the Court in *Chandler's* interpretation of it, leads us to conclude that *Pecker* and *Morris* were incorrectly decided, we need not address the Army's sovereign immunity argument.

FN20. The question of whether a federal-employee plaintiff who *does* put his employing agency's discrimination at issue may require the district court to make a finding of liability based on the OFO's finding of discrimination is not before us today. We note, however, that the logic of *Chandler* leads inexorably to the conclusion that he may not.

FN21. In *Girard v. Rubin,* 62 F.3d 1244 (9th Cir.1995), the Ninth Circuit held that an OFO decision that the plaintiff's administrative complaint was timely waived any argument by the employing agency in a federal-court suit that the administrative complaint was untimely. *Id.* at 1247. It is far from certain that the Ninth Circuit would interpret *Girard* to allow a federal-employee plaintiff to bring a suit seeking only additional relief.

FN22. In a holding alternative to its holding that subject-matter jurisdiction was lacking over **Laber's** claim for additional damages because he did not also put the Army's underlying

discrimination at issue, the district court also concluded that it lacked subject-matter jurisdiction over **Laber's** religious discrimination claim because he had already accepted and could not return part of the OFO's ordered remedy on that claim; *i.e.,* the Army's Germany job offer. We disagree. Whether **Laber** has accepted part of the remedy may or may not be relevant in evaluating whether **Laber's** suit is barred by an affirmative defense--such as res judicata, estoppel, or election of remedies--but it does not affect the fact that **Laber's** suit was a "civil action[ ] arising under the ... laws ... of the United States." 28 U.S.C.A. § 1331 (West 1993).

FN23. The Army does not argue that we should apply the "good cause" legal standard in Fed.R.Civ.P. 16(b) because **Laber's** motion to amend came after the deadline set in the scheduling order issued in this case. We therefore do not consider the issue.

FN24. The Army asserts that it did make its untimeliness argument below. The timeliness argument, however, is entirely absent from the Army's opposition to **Laber's** motion to amend. (Def.'s Opp. to Pl.'s Mot. to Amend.) And while the Army did make a timeliness argument in support of its motion for summary judgment, a close review of the record reveals that the Army argued only that **Laber's** request for attorney's fees and costs was untimely because it came more than 90 days after the OFO's January 30, 2003 decision, not that his religious discrimination claim itself was untimely because it came more than 90 days after the OFO's August 11, 2000 denial of his motion for reconsideration. (Mem. in Supp. of Def.'s Mot. For Summ. J. at 8.) These are different arguments entirely, and making the one does not preserve the other. *Cf. United States v. White,* 405 F.3d 208, 216 n. 5 (4th Cir.2005) (noting that pre-serving claim that United States Sentencing Guidelines were incorrectly applied mandatorily is insufficient to preserve claim that mandatory application of the Guidelines creates a Sixth Amendment error).

FN25. The Army's argument that **Laber's** religious discrimination claim was untimely is not an argument challenging the district court's subject-matter jurisdiction to hear the claim. In *Irwin v. Dept. of Vet. Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Supreme Court held that the time limit in § 2000e-16(c), like all federal statutes creating a cause of action against the federal government, is subject to a rebuttable presumption of equitable tolling. *Id.* at 95. That section contains no language that would tend to rebut

the presumption that equitable tolling applies to the 90-day time limit. 42 U.S.C.A. § 2000e-16(c). If equitable tolling applies, which it does, the time limits are not jurisdictional, but are rather in the nature of a statute-of-limitations defense. *See, e.g., Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (noting that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"). We therefore conclude that the Army's timeliness argument is in the nature of a statute-of-limitations defense that can be--and was-- waived. Every court of appeals that addressed this issue has concluded that the time limit in § 2000e-16(c) is not a jurisdictional requirement. *See Hedges v. United States,* 404 F.3d 744, 749 (3d Cir.2005); *Boos v. Runyon,* 201 F.3d 178, 183 (2d Cir.2000); *Belhomme v. Widnall,* 127 F.3d 1214, 1216 n. 1 (10th Cir.1997); *Bowden v. United States,* 106 F.3d 433, 437 (D.C.Cir.1997); *White v. Bentsen,* 31 F.3d 474, 475 (7th Cir.1994); *Ynclan v. Dept. of Air Force,* 943 F.2d 1388, 1391 (5th Cir.1991). Nothing in this opinion precludes the Army from raising its untimeliness argument on remand.

FN26. Our good colleague Judge Niemeyer would deny **Laber** the opportunity to amend his complaint, because he believes that **Laber's** amended complaint is futile. Judge Niemeyer makes two arguments in support of this contention: first, that the amended complaint will not initiate a "civil action" because **Laber** has already accepted the OFO's remedy, a fact that makes it impossible for him to place the question of the appropriate remedy before the court for de novo consideration; and second, that **Laber's** amended complaint is barred by his acceptance of the OFO's remedy based on notions of estoppel and equitable mootness.

We respectfully disagree with Judge Niemeyer's argument that **Laber's** amended complaint does not initiate a "civil action." **Laber's** amended complaint undoubtedly seeks a de novo judicial evaluation of the proper remedy. (Pl.'s Amended Complaint ("Plaintiff claims pecuniary, non-pecuniary compensatory damages, and to be made whole absent the discrimination ... in accordance with all applicable laws.").) As we have observed (and refrained from deciding), it may be that one or more affirmative defenses, if raised on remand, will prevent **Laber** from obtaining such an evaluation. In such a case, **Laber's** "civil action" will fail, but it will not cease to be a "civil action." In other words, certain

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

affirmative defenses, if raised on remand, may operate to *deny* **Laber** de novo judicial consideration of his claim, but this fact does not mean that **Laber's** amended complaint does not *seek* judicial consideration of those issues in the first place. To hold otherwise, as Judge Niemeyer suggests, would convert affirmative defenses from arguments that must be raised by the defendant, *see* [Fed R. Civ. P. 8(c)](#), to threshold hurdles that the plaintiff must surmount. We believe such a holding is incorrect.

As to Judge Niemeyer's second argument--that **Laber's** suit is barred under the doctrines of estoppel and equitable mootness--we decline to address the argument because the Army did not make it. Judge Niemeyer cites a sentence from the Army's brief it suggests raises the estoppel and equitable mootness arguments, but it is clear that neither the quote nor any other portion of the Army's brief remotely resembles the argument Judge Niemeyer's dissent makes. If the Army wishes, it can raise the argument on remand, and the district court can address the issue with the benefit of full briefing.

[FN27.](#) It is undisputed that the district court had subject-matter jurisdiction on these claims or that the claims were timely.

[FN28.](#) It is undisputed that **Laber** falls within the class of federal employees

covered by the ADEA.

[FN29.](#) **Laber** argues that the Form 2302 in the record is not the actual Form 2302 that Scott examined when **Laber** applied for the Operations Research Analyst position. Even assuming this is true, Scott's affidavit, which was given shortly after Scott's non-selection of **Laber** for the position, states that his "review of [**Laber's** Form 2302] concluded he didn't have appropriate experience which would qualify him for the position being recruited." (J.A. at 278.) **Laber** neither argues nor submits any evidence that *this* testimony was based on review of an incorrect Form 2302.

[FN30.](#) We have never squarely held that either Title VII or the ADEA give federal employees the right to bring a retaliation claim. The Army does not argue that federal employees do not have a right to bring such a claim, and, because we affirm the district court's resolution of **Laber's** retaliation claim on other grounds, we may assume that such a right exists.

[FN*](#) The majority suggests that because **Laber's** amended complaint "initiate[s] a 'civil action' " that "undoubtedly seeks a de novo judicial evaluation of the proper remedy," the fact that he might be precluded from prosecuting that action because he has

--- F.3d ----, 2006 WL 348289 (4th Cir.(Va.))
**(Cite as: 2006 WL 348289 (4th Cir.(Va.)))**

already prosecuted an agency proceeding and accepted its remedy should be raised on remand through affirmative defenses. *See ante* at n. 26. Of course, this conclusion turns blinders to the proceedings to date in which **Laber** did file a civil action in the district court and the district court did already dismiss it precisely because **Laber** had already pursued an agency action and could not now file a civil action *de novo.* The majority is running the procedure in this case in circles, and expensive ones for judicial administration.

--- F.3d ----, 2006 WL 348289 (4th Cir.(Va.))

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.